UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GRISELDA McGEHEE, ET AL., | |
| Plaintiff, | Case No. 3:14-1684 |
| v. | Judge Crenshaw<br>Magistrate Judge Newbern |
| DIVERSIFIED GLOBAL SERVICES, LLC, and DEBORAH MILLER, | |
| Defendants. | |

To: The Honorable Waverly D. Crenshaw, Jr., District Judge

## REPORT AND RECOMMENDATION

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Procedurally adequate service under Federal Rule of Civil Procedure 4 is the necessary prerequisite to a court's exercise of personal jurisdiction. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Without it, "[a] defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds." *Insurance Corp. of Ireland*, 456 U.S. at 706; *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931). If proper service was never achieved, that challenge will be successful.

Plaintiffs, who are former employees of Defendant Diversified Global Services, LLC, filed this wage and hour case on August 15, 2014, asserting claims of fraud and violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, against Diversified Global Services and its co-

owner, Deborah Miller. (Doc. No. 1.) On April 11, 2016, the Court granted Plaintiffs' Motion for Default Judgment against Miller, finding that she had failed to respond to the lawsuit against her. (Doc. No. 32.) The case was dismissed and the Clerk was directed to close the file. (*Id.*)

Pending now before the Court is Miller's Motion to Alter or Amend the Judgment, filed May 9, 2016, in which Miller claims the default judgment against her is void because she was never properly served. (Doc. No. 43.) The motion was "referred to the Magistrate Judge to determine whether default and default judgment were properly entered in this matter." (Doc. No. 44.) For the reasons given below, the undersigned finds that Miller was not properly served with process and that this Court therefore lacked the authority to enter default and default judgment against her. It is therefore RECOMMENDED that Miller's motion be GRANTED.

**I. Background**

Federal Rule of Civil Procedure 4 allows for service upon individuals by several methods: in person, by leaving process at the individual's dwelling place, or by "delivering a copy of [the complaint and summons] to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). The question presented by Miller's motion is whether any of these methods was ever properly used to serve her at the initiation of this lawsuit.

There is no indication in the record that Plaintiffs ever attempted to serve Miller personally, nor were they required to do so.[1] Instead, the record reflects that a process server delivered the complaint and summons addressed to Deborah Miller to attorney P. Edward Schell on September 9, 2014. (Doc. No. 6.) Miller did not answer the complaint and did not appear at

---

[1] Citing Tennessee law, Miller argues that service upon an authorized agent is only permissible if service upon the principal was first attempted without success due to the principal's evasiveness. (Doc. No. 53, PageID# 315–16.) However, Miller concedes that federal law, which governs here, does not require this antecedent attempt to serve the principal. (*Id.*)

2

an initial case management conference. Plaintiffs moved for entry of default against both Defendants. (Doc. No. 7.)

The Clerk of Court granted entry of default against Diversified Global Services. (Doc. No. 8.) With regard to Miller, however, the Clerk found that "Plaintiffs claim to have served Defendant Miller through an agent authorized to accept service on her behalf at an address not specified in the Complaint and different than the address to which notice of the instant motion was sent as indicated in the certificate of service." (*Id*.) The Clerk further noted that "[n]o evidence of [Schell's] alleged agency is provided in Plaintiffs' request." (*Id*.) The Clerk therefore denied entry of default. (*Id*.) The Clerk's Order was served on Miller by mail at a Spring Hill, Tennessee, address and returned as unclaimed. (Doc. No. 11.)

The Clerk entered default judgment against Diversified Global Services in the amount of $14,879.84. (Doc. No. 12.) The Court granted Plaintiffs' motion for attorneys' fees and costs (Doc. No. 16) in the amount of $16,773.19. (Doc. No. 21.)

Only after default judgment was granted against Diversified Global Services did Plaintiffs again move for entry of default against Miller. (Doc. No. 22.) In support of this second motion, Plaintiffs provide a declaration from their counsel Karla Campbell regarding Schell's status as Miller's agent. (Doc. No. 23.) In the declaration, Campbell states that, shortly after serving Diversified Global Services, she "was contacted by telephone by two attorneys, Edward Schell and Griffin Dunham, purporting to represent Defendant Miller in this matter. Both attorneys represented to me that they were authorized to accept service on behalf of Defendant Miller." (*Id*.) Campbell's communications with Schell are apparently not recorded. However, Plaintiffs provide email correspondence between Campbell and Dunham from the day after Schell accepted service. In that correspondence, Dunham states, "I can accept service on behalf

3

of any party that hasn't been served." (Doc. No. 23-1.) Campbell responds, "My process server confirms that attorney Schell signed for the summons yesterday, so I consider Ms. Miller to have been served on that date, even though she may be changing representation." (*Id*.) Plaintiffs served the second motion for default on Schell at a business address and on Miller at a residential address in Franklin, Tennessee. (*Id*.) Plaintiffs did not serve Dunham. Miller did not respond, through Schell or otherwise.

The Clerk entered default against Miller. (Doc. No. 26.) The entry of default was served only on Miller by certified mail to the Franklin, Tennessee address. (Doc. No. 27.) That mail was returned to the Court as unclaimed on March 11, 2016. (Doc. No. 28.)

Plaintiffs moved for default judgment on March 17, 2016. (Doc. No. 29.) Plaintiffs served their motion on Schell at his business address and Miller at the Franklin, Tennessee address. (*Id*.) Again, Miller did not respond. The Court granted Plaintiffs' motion for default judgment, finding that "[d]espite having been served and having default entered against her, Defendant Miller has not filed a response to the Complaint, the Motion for Default, or the Motion for Default Judgment." (Doc. No. 32.) The Court entered default judgment in the amount of $39,669.20. (*Id*.)

The Court served its order by certified mail to Diversified Global Services through its registered agent, to Schell at the business address, and to Miller at the Franklin, Tennessee address. (Doc. No. 33.) The record contains an executed green card reflecting delivery of the order to Schell (Doc. No. 34) and to Diversified Global Services (Doc. No. 35). Again, the certified mail sent to Miller was returned as unclaimed. (Doc. No. 46.)

Plaintiffs made applications for and received writs of execution of the default judgment against Miller and several companies through whom she does business on April 19, 2016. (Doc.

4

Nos. 36, 37, 38, 39.) Miller made her first appearance in this litigation on May 9, 2016, by filing a Motion to Alter or Amend the Judgment against her. (Doc. No. 43.) Miller was represented in this motion by a third attorney, Ernie Gilkes. (*Id.*)

Miller does not contest that she was aware of this lawsuit, but states that she was "never personally served with the complaint and summons" and did not receive notice of the entry of default or default judgment against her. (Doc. No. 43-1, PageID# 265.) Miller's motion thus boils down to one question: Did Plaintiffs competently execute service when they served process on Schell as Miller's agent?

**II. Analysis**

"[W]ithout proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 350 (1999)). It is a "bedrock principle that a defendant is not obliged to engage in civil litigation unless the defendant is properly notified of the action and brought under the court's authority, i.e., personal jurisdiction, by formal service of process." *Arthur v. Litton Loan Servicing LP*, 249 F. Supp. 2d 924, 928 (E.D. Tenn. 2002). Actual notice of the lawsuit by the defendant is immaterial to the question of whether that defendant was properly served. *LSJ Inv. Co.*, 167 F.3d at 322 (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1155–56 (6th Cir. 1991)); *Genesis Diamonds, LLC v. John Hardy, Inc.*, No. 3:15-cv-01093, 2016 WL 3478915, at *6 (M.D. Tenn. June 27, 2016). "And in the absence of personal jurisdiction, a federal court is 'powerless to proceed to an adjudication.'" *King*, 694 F.3d at 655 (quoting *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 584 (1999)).

### A. Setting Aside Default Judgment Under Rule 60(b)

While styled as a motion to alter or amend the judgment, Miller's motion is, in substance, a challenge to the validity of the final default judgment entered against her. (Doc. No. 43, PageID# 262.) Under Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Here, because Miller argues that the Court did not have personal jurisdiction to enter judgment against her, her claim is best construed as one for relief from a void judgment under Rule 60(b)(4).

As a general rule, "[w]here Rule 60(b) is invoked to set aside a default judgment, the court must both consider the Rule 55 equitable factors . . . and find that one of the specific requirements of Rule 60(b) is met." *Thompson v. American Home Assur. Co.*, 95 F.3d 429, 433 (6th Cir. 1996). However, where a party seeks to set aside a default judgment because it is void—and not for reasons like mistake or inadvertence—the court may not deny the motion based on a weighing of the equities. *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002). *See also S.E.C. v. Internet Solutions for Business, Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007). "[T]he district court has no discretion—the judgment is either void or it is not. If the judgment is void, the district court *must* set it aside." *Id.* (internal quotations omitted); *Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006) ("[D]enying a motion to vacate a void judgment is a per se abuse of discretion.").

### B. Burden of Proof

Authority is split as to who bears the burden of proof when service is challenged after default judgment has been entered. It is well-settled that the plaintiff bears the burden to establish that service was proper when it is challenged through a Rule 12(b)(5) motion to dismiss for

6

insufficient service of process. *Metro. Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006); *Shires v. Magnavox Co.*, 74 F.R.D. 373, 377 (E.D. Tenn. 1977). This allocation flows from the general presumption that a plaintiff "must carry throughout the litigation the burden of showing that he is properly in the court." *McNutt v. General Motors Acceptance Corp. of Indiana, Inc.*, 298 U.S. 178, 189 (1936).

Some courts have found that this presumption remains and that the burden stays with the plaintiff no matter the stage at which service is challenged. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009) ("It goes without saying that, where the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present . . . This standard applies whether the issue is raised by way of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) or a motion to set aside a judgment under Rule 60(b)(4)."); *see also*, *Morris v. B.C. Olympiakos, SFP*, 721 F. Supp. 2d 546, 554–57 (S.D. Tex. 2010) (citing *Rockwell International Corp. v. KND Corp.*, 83 F.R.D. 556 (N.D. Tex. 1979)); *Donnely v. Copeland Intra Lenses, Inc.,* 87 F.R.D. 80, 85 (E.D.N.Y.1980); *DiCesare-Englar Productions, Inc. v. Mainman, Ltd.,* 81 F.R.D. 703, 705 (W.D.Pa.1979). Other courts, however, follow a contrary rule: "If the defendant, after receiving notice, chooses to let the case go to a default judgment, the defendant must then shoulder the burden of proof when the defendant decides to contest jurisdiction in a postjudgment rule 60(b)(4) motion." *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir. 1986); *see also* *"R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 126 (2d Cir. 2008); *S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007); *Hazen Research, Inc. v. Omega Minerals, Inc.*, 497 F.2d 151, 154 (5th Cir. 1974).

The Sixth Circuit has not yet addressed this issue, and it need not be resolved in this case.[2] There is no debate that, in considering a motion to set aside default judgment, the Court must recognize the "policy consideration that values the disposition of cases on their merits [which] dictates that the court 'should . . . construe[ ] all ambiguous or disputed facts in the light most favorable to the defendant[].'" *Burrell v. Henderson*, 434 F.3d 826, 832 (6th Cir. 2006) (quoting *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 398 (6th Cir. 1987)). Construing the evidence presented under this standard, the Court finds that it supports Miller's position, whether or not she bears the burden of proof.

**C. Agency Relationship Between Miller and Schell**

The validity of the Court's jurisdiction here turns upon whether Schell was authorized to accept service as Miller's agent. Agency for this purpose is held to a rigorous standard. "The bare fact that an alleged agent actually accepts process for the defendant is not enough to constitute valid service of process. There must be evidence that the defendant intended to confer upon its agent the specific authority to receive and accept service of process for the defendant." *Arthur*, 249 F. Supp. 2d at 929 (quoting 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1097 (3d ed. 2002)). This factual basis may be "express or implied from the type of relationship which has been established between the defendant and the alleged agent." *Id*.

Proof of an attorney-client relationship alone is not sufficient. "[T]he record must show that the attorney exercised authority beyond the attorney-client relationship, including the power

---

[2] One district court in the Sixth Circuit noted the split of authority but declined to assign either party the burden of proof, noting that "the Court is able to adjudicate this case without deciding this question." *Medical Distribution, Inc. v. Quest Healthcare, Inc.*, No. Civ.A. 3:00CV-154-H, 2002 WL 32398447, at *2 & n.2 (W.D. Ky. Feb. 1, 2002).

to accept service." *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997); *see also MW Ag, Inc. v. New Hampshire Ins. Co.*, 107 F.3d 644, 647 (8th Cir. 1997) (finding attorney not authorized to accept service "merely because [he] negotiated . . . on behalf of [the client]"). At a minimum, long-standing precedent advises that "[t]he authority of an attorney commences with his retainer. He cannot, while acting generally as an attorney . . . accept service of process which commences the action, without any authority so to do from his principal." *Stone v. Bank of Commerce*, 174 U.S. 412, 421 (1899); *Schwarz v. Thomas*, 222 F.2d 305, 308 (D.C. Cir. 1955) (attorney "has no power to make any agreement for his client before a suit has been commenced, or before he has been retained to commence one") (citing *Stone*, 174 U.S. at 421).

In support of their argument that they properly served Schell as Miller's agent, Plaintiffs submit a letter from Schell to Miller dated September 11, 2014. (Doc. No. 50-1, PageID# 292–93.) The letter states, in full:

> This letter will confirm that you met with me in my office on Monday, September 8, 2014 in order to discuss several matters. You indicated that you would like to hire an attorney to have on retainer and to be able to call about various business matters. I agreed to serve in that capacity upon the payment of a retainer of $2,500.00. You indicated that you intended to proceed on that basis. We scheduled an appointment for you to return to my office at 3:00 p.m. on Wednesday, September 10, 2014. However, you did not show up for that appointment. I called you yesterday afternoon in order to determine whether you intended to keep your appointment, but you have not returned that call or otherwise communicated with me.
>
> In the voice mail I left you yesterday, I advised you that I had accepted service of process in the above referenced case, as you asked me to do when you were here on Monday. You should be aware that you have twenty-one (21) days to file an answer to this Complaint and your time began to run yesterday. I have not been in contact with the attorney representing the Plaintiff in this case. One of the things you and I discussed the other day was the possibility of me contacting that attorney to discuss a prompt and fair settlement before incurring substantial legal expense.

9

> You should be aware that I will take no further action on your behalf unless and until I am retained to do so. I urge you not to neglect this matter, as there will be significant legal consequences to you if you fail to respond to the Complaint. If you have questions or comments, please feel free to contact me.

(*Id.*)

Several things are apparent from this letter. First, Schell believed that Miller had asked him to accept service of process in this matter and informed her that he had done so. Second, Schell and Miller discussed forming an attorney-client relationship contingent upon her payment of a $2,500.00 retainer. And third, Miller did not pay the retainer or otherwise formalize a relationship with Schell.

Miller states by affidavit that she did not receive this letter and did not know that Schell had accepted service on her behalf. (Doc. No. 53-1, PageID# 321.) Miller notes that the letter was addressed in her name to a UPS Store where Diversified Global Services rented a mailbox. Miller posits, however, that she did not receive the letter from the UPS Store because the mailbox was not in her name and the letter did not bear an identifying mailbox number. (*Id*. at PageID# 322.) Miller further states that Schell "was never hired by [her] to act as [her] attorney or authorized to accept service of process on [her] behalf." (Doc. No. 43-1, PageID# 265–66.) Further, although Schell states that he accepted service, he does not state that he forwarded a copy of the complaint and summons to Miller, nor does the letter show that it was sent with enclosures.

"The rule is clear . . . that the authority to accept such service cannot be shown by the extrajudicial statements of the attorney [agent]." *Whisman v. Robbins*, 712 F. Supp. 632, 636 (S.D. Ohio 1988) (quoting *Schwarz v. Thomas*, 222 F.2d 305, 308 (D.C. Cir. 1955)). Schell also disclaimed any duty to Miller "unless and until" his retainer was paid. (Doc. No. 50-1, PageID# 292–93.) By his own terms, Schell was not yet Miller's attorney and had none of the agency that

10

might stem from that relationship. *Schwarz*, 222 F.2d at 308. Further, there is no indication in Schell's statement that he actually delivered the summons and complaint to Miller. That alone would be sufficient grounds upon which to challenge service. *Homer v. Jones-Bey*, 415 F.3d 748, 754 (7th Cir. 2005). Finally, to the extent that Schell and Miller's affidavits create a true "he said, she said" fact dispute, the overriding preference that cases be decided on their merits requires that disputed facts be resolved in Miller's favor. *Burrell*, 434 F.3d at 832

For these reasons, the undersigned finds insufficient "evidence that the defendant intended to confer upon its agent the specific authority to receive and accept service of process for the defendant" and, therefore, insufficient evidence upon which to find that proper service took place. *Arthur*, 249 F. Supp. 2d at 929.

This conclusion is bolstered by the declaration of Plaintiffs' counsel recounting an email conversation with attorney Griffin Dunham. By email dated September 10, 2014, Dunham advised Plaintiffs' counsel that he represented both Miller and Diversified Global Services and stated: "I can accept service on behalf of any party that hasn't been served." (Doc. 51-1, PageID# 297–98.) Plaintiffs' counsel responded: "My process server confirms that attorney Schell signed for the summons yesterday, so I consider Ms. Miller to have been served on that date, even though she may be changing representation." (*Id*. at PageID# 297.) It appears, therefore, that, at the very least, Plaintiffs' counsel had reason to suspect that Schell's relationship with Miller was not ongoing. Plaintiffs' counsel had an opportunity to ensure that Miller was properly served, but did not take it. *Cf. Rojek v. Catholic Charities, Inc.*, No. 08-14492, 2009 WL 3834013, at *6 (E.D. Mich. Nov. 16, 2009) ("That defense counsel agreed to accept service of the amended complaint . . . does not remedy this flaw in the original service of process, even if it created in

Plaintiff the impression that the improper service of process defense would eventually be resolved.").

Though the undersigned does not doubt that Schell assured Plaintiffs' counsel of his authority to accept service on Miller's behalf, "such assurances [are] simply not . . . sufficient to establish that Defendant [Miller] had, in fact, appointed Mr. [Schell] as [her] agent." *Whisman*, 712 F. Supp. at 636. Moreover, Plaintiffs' attempt to impute to Miller proper notice of the claims against her because, "[a]s of August 20, 2014, Miller was a managing member of [DGS], and Plaintiffs undisputedly served the summons and complaint on [DGS]'s Registered Agent on August 20, 2014" (Doc. No. 50, PageID# 286), is without merit. Actual notice is immaterial to the question of whether a defendant was properly served. *LSJ Inv. Co.*, 167 F.3d at 322.

In sum, the undersigned finds that Plaintiffs have failed to rebut Miller's testimony that she was not properly served; that this Court therefore lacked jurisdiction to enter default or default judgment against her; and that the judgment should be set aside as void pursuant to Federal Rule of Civil Procedure 60(b)(4).

Miller does not ask that the Court dismiss this action against her because she was not served within the 90 days provided by Rule 4(m). Instead, she asks that she be properly served so that she can defend against Plaintiffs' claims. Rule 4(m) gives courts the discretion to dismiss an action if service is not timely or to "order that service be made in a specified time." Fed. R. Civ. P. 4(m); *United States v. Ninety Three Firearms*, 330 F.3d 414, 426 (6th Cir. 2003). The court may exercise that discretion even in the absence of a showing of good cause why service was not effected. *Slenzka v. Landstar Ranger, Inc.*, 204 F.R.D. 322, 326 (E.D. Mich. 2001). Here, by waving an argument that the action be dismissed, Miller concedes that she will not be prejudiced

by allowing Plaintiffs to serve her and proceed with their claims. Accordingly, the undersigned further RECOMENDS that Plaintiffs be afforded thirty days within which to serve Miller.

**III. Recommendation**

In light of the foregoing, the Magistrate Judge RECOMMENDS that Miller's motion (Doc. No. 43) be granted and the default judgment entered against her be found void. The Magistrate Judge further RECOMMENDS that Plaintiffs be afforded thirty days from the District Court's order in which to serve Miller.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

ENTERED this 17th day of March, 2017.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge